## George A. Brown v. Fannie Butler.

1. DRAM SHOP ACT—*Actions Under.*—In actions under section 9 of the dram shop act, where it is shown that the deceased was intoxicated, it is for the jury to determine from the evidence whether such intoxication was caused in whole or in part by liquor sold to him by the defendant.

2. MEASURE OF PROOF—*Actions Under the Dram Shop Act.*—Actions for damages under section 9 of the dram shop act, are civil actions; the plaintiff is only required to prove his case by a preponderance of evidence.

3. INSTRUCTIONS—*Increasing the Burden of Proof.*—An instruction which requires of the plaintiff " strict proof," and directs the jury not to give him a verdict except upon a " clear preponderance of the evidence," in cases where, if the weight of the evidence is sufficient to turn the scale in his favor he is entitled to recover, is properly refused.

4. DAMAGES—*Measure of.*—In these cases it is impossible to compute the actual damages upon any definite or specific basis. The jury must determine the question as practical men upon the evidence before them as best they can, and unless their finding is clearly excessive, it will not be disturbed.

**Action Under the Dram Shop Act.**—Error to Circuit Court of Bureau County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

M. R. HARRIS, attorney for plaintiff in error.

ECKELS & KYLE and OWEN G. LOVEJOY, attorneys for defendant in error.

Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action, in his or her name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons. 1 Starr & Curtis, 971, Sec. 9.

To show that others may have sold liquor to plaintiff's husband on the day he was injured is no defense, if the defendant did in fact sell or give the intoxicating liquor which caused, in part, the intoxication which caused the injury.    Flinn v. Fogarty, 106 Ill. 263; O'Halleran et al. v. Kingston, 16 Brad. 659.

It is not required that the evidence should be clear and positive, and specific as to the time, place, manner, and each item of loss, to authorize the jury to find injury to the support of the plaintiff below, but that fact may be proved by circumstances.    Horn v. Smith, 77 Ill. 381.

Intoxicating liquors include spirituous, vinous or malt liquors under the "dram shop" law.    1 Starr & Curtis, 967, Sec. 1.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

In the month of July, 1892, plaintiff in error was a saloon keeper, doing business in the village of Ladd, Bureau county, Illinois.    Defendant in error is the widow of William H. Butler, deceased, who was a farmer, living about five miles from Ladd, and who died about July 10, 1892, from injuries received in falling, or being thrown out of his cart, while he was in a state of intoxication.    This suit was brought against plaintiff in error and three other persons, under Sec. 9 of the Dram Shop Act (1 Starr & Curtis 971), to recover damages sustained by defendant in error, in her means of support, by reason of the death of her husband.    The suit was dismissed as to two of the defendants, and upon a trial by a jury there was a verdict of guilty as to plaintiff in error, and of not guilty as to the other defendant.    The jury assessed the damages of plaintiff at $1,000.    A motion for a new trial was overruled and judgment on the verdict for $1,000 damages and for costs.    Plaintiff in error brings the case to this court and insists upon a reversal on three grounds:

First.    That the evidence does not support the verdict.

Second.    That the court erred in giving, modifying and refusing instructions.

Third.    That the damages are excessive.

The evidence shows that when deceased left his home about half past seven in the morning, he was entirely sober, and was in the same condition when he reached the village of · Ladd, about eight o'clock. Between eight and nine o'clock the witness John Meek drank with the deceased twice in the saloon of plaintiff in error. He says it was what they called ale; that they called for beer, and deceased drank two beers. Being asked the question, " That was common Lager beer?" the witness replied, " Oh, just common beer."

About nine o'clock, the village marshal, Wm. J. Boswell, testifies that he saw deceased sitting in front of the same saloon, and between nine and ten o'clock, saw him drink twice therein, and says that it was a dark brown liquor, although he could not swear what it was.

The testimony of Andrew Curren shows that by about eleven o'clock or a little later, the deceased was intoxicated, or as the witness expresses it, " pretty full," and to the same effect is the testimony of Dr. Butler, a brother of the deceased.

It would seem from the evidence that about the first place that deceased went to when he got to the village, was Brown's saloon; that he was in and out of there, more or less, for a couple of hours, and during that time, or between the hours of eight and eleven o'clock, had become intoxicated. By one o'clock, according to the witness High, the deceased had become maudlin drunk and could not stand still. Joseph Kaar swears deceased was so drunk about three o'clock that he fell out of his cart. The witness Mrs. Zearing saw him driving toward home about four o'clock and says she thinks he was drunk and unfit to drive. He was seen lashing his horse while going in the direction of his home, and when he had gotten about two and a half miles from Ladd he either fell or was thrown out of his cart, and sustained injuries which caused his death in about thirty hours afterward. We think it quite clear that the deceased came to his death by reason of his intoxication, and it was for the jury to say whether such intoxication

was caused in whole or in part by liquor sold to him by plaintiff in error.

It does not appear whether deceased had been drinking in any other saloon or not, nor is it material. If, by reason of his intoxication, deceased lost his life, then, if such intoxication was caused in whole or in part by intoxicating liquor sold or given to him by plaintiff in error, the liability exists, no matter how much may have been furnished by others. Parties engaging in the saloon business know that they incur just such risks as this, and that the sale of one single glass of intoxicating liquor may bring upon them a liability for the wrongful or careless acts of others, over whom they have no control; but it is one of the dangers of the traffic, and they must take the consequences if they follow the business.

But it is insisted there is no proof that the liquor sold to deceased by plaintiff in error was intoxicating, and for that reason the judgment should be reversed. It is to be observed this is a civil suit, and not a criminal prosecution. The plaintiff was only bound to prove her case by a preponderance of the evidence. Plaintiff in error kept a saloon where he sold intoxicating liquors; the evidence shows deceased drank in that saloon several times, of a dark colored liquor, which a witness said was ale; that they called for beer and that what deceased drank was common beer; the evidence also showed that whatever it was that deceased was drinking, it made him intoxicated.

From the testimony and all the facts and circumstances appearing in the evidence, we think the jury were warranted in finding that the liquor sold to deceased was intoxicating, and that it contributed, in whole or in part, to produce the intoxication which caused his death. We fail to find in the evidence any basis for the assumption that deceased was sober at any time, after he ceased drinking in Brown's saloon, up to the time of his injury. On the contrary, the evidence warrants the conclusion that from the time he took his first drink in that saloon, he kept on drinking until he became so intoxicated as to be scarcely able to take care

of himself, which continued until he was found unconscious and dying from his injuries. Without discussing this question further, we hold that the evidence was sufficient to sustain the verdict.

Upon the second point, while some of the instructions given for plaintiff may be open to slight criticism, there is no such error in them as requires a reversal upon that ground.

There was no error in the modification of the sixteenth instruction asked by the defendant, as the same was given by the court. The seventh instruction asked by him was clearly erroneous. It was an attempt to place upon the plaintiff a greater burden in proving her case than the law requires. If given, the jury would have been bound to require of the plaintiff " strict proof," and not give her a verdict except upon a " clear preponderance of the evidence," while the law is, that if the weight of the evidence is sufficient to turn the scale in her favor, she was entitled to recover. Miller v. Balthasser, 78 Ill. 305. Instructions of this character have often been condemned, and this was properly refused.

There was no error in refusing the seventeenth and eighteenth instructions asked by the defendant. They assume that for several hours after deceased drank liquor in Brown's saloon, he was sober, which assumption, as we have seen, was not warranted by the evidence. We find no substantial error in giving, modifying or refusing instructions.

The only remaining question is, were the damages excessive ?

The deceased was a man forty-two years old, and his wife was of the same age. He was a farmer, renting land from others, and had been in that business some thirteen years, during which time he had supported his wife, the defendant in error. The year of his death he had rented and farmed 160 acres of land, raising seventy acres of corn, and about forty acres of oats. Defendant in error testified she thought it would be worth from $200 to $300 per year to keep her, and her husband had supported her during his life.

In these cases it is impossible to compute the actual damages upon any definite or specific basis. The jury must determine that question as practical men, upon the evidence before them, as best they can, and unless their finding is clearly excessive, it will not be disturbed. It is manifest that by the death of her husband the defendant in error was injured in her means of support, and we can not think a verdict of $1,000 was excessive. The judgment will be affirmed.